### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. _____ |
| | ) |
| MARIA STINSON, f/k/a MARIA SUTTON; | ) |
| CENTRAL FLORIDA DREAM | ) |
| REALTY, INC.; and JASON STINSON, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### COMPLAINT

COMES NOW the United States of America, by and through its undersigned counsel, and complains and alleges as follows:

### JURISDICTION AND VENUE

1.      This civil action is commenced pursuant to Section 7402(a) of the Internal Revenue Code of 1986 (title 26 of United States Code) ("IRC") and the Court's ancillary jurisdiction to enforce a judgment for equitable monetary relief entered in *United States v. Jason Stinson, individually and doing business as LBS Tax Services and Nation Tax Services LLC*, Case No. 6:14-cv-1534-ACC-TBS.  Pursuant to Sections 726.105(1)(a) and 726.106(1) of the Florida Statutes ("FSA"), the United States asks the Court to determine that a transfer from the judgment debtor in Case No. 6:14-cv-1534-ACC-TBS was fraudulent, to impose equitable liens on the proceeds of that transfer, and to enter judgment in the amount of the transfer against the transferee.  Alternatively, the United States asks the Court to compel the judgment debtor in

1

Case No. 6:14-cv-1534-ACC-TBS to assign to the United States his interest in a purported note, and to enter judgment in favor of the United States for the maker's default on the note.

2. Jurisdiction over this action is vested in the Court by Section 1345 of title 28, United States Code, by IRC Section 7402, and the Court's ancillary jurisdiction to enforce its judgment in a prior case.

3. Venue is proper in the United States District Court for the Middle District of Florida by virtue of 28 U.S.C. § 1391(b)(1) because the individual defendants reside in Seminole County, Florida, within the jurisdiction of this court, and the corporate defendant's principal place of business is in Seminole County, Florida.

## DEFENDANTS

4. The defendant Maria Stinson, formerly known as Maria Sutton, resides in Seminole County, Florida, within the jurisdiction of this court.

5. The defendant Central Florida Dream Realty, Inc., ("Central Florida Dream Realty") is an active corporation incorporated in the State of Florida and wholly owned by Maria Stinson. Its principal place of business is in Seminole County, Florida.

6. The defendant Jason Stinson resides in Seminole County, Florida, and is the husband of Maria Sutton.

## GENERAL ALLLEGATIONS

7. Jason Stinson owned and operated a tax return preparation business that was intended to, and did, produce thousands of fraudulent federal income tax returns and generated exorbitant profits for Jason Stinson. The United States eventually obtained an injunction

shutting down the business and a judgment in the amount of $949,952.47 for equitable monetary relief, specifically, the disgorgement of unjust profits.

8. Jason Stinson entered the tax return preparation business in 2010 when he was hired by Walner Gachette to be the manager of a store for LBS Tax Services. In 2011, Jason Stinson owned his own tax return preparation store in Tampa, Florida, through a single-member limited liability company, Jason Stinson, LLC, paying Gachette $5,000 for the use of the LBS Tax Services name. He later changed the name of his limited liability company to Nation Tax Services, LLC. By 2012, Jason Stinson (through his limited liability company) owned and operated 12 stores.

9. Jason Stinson and Maria Sutton met in 2012, and were living together, along with Maria Sutton's minor child, by November 2012. They had another child together in 2013.

10. In March 2013, the Internal Revenue Service began an investigation into Jason Stinson's tax return preparation business.

11. In April 2013, Jason Stinson purchased a home located at 2205 Smoketree Court, Longwood, Florida ("2205 Smoketree Court"). He paid $515,000 for the home using the proceeds from his tax return preparation business to cover the entire cost of the home.

12. Also in 2013, Jason dissociated himself from Walner Gachette, dropped the LBS Tax Services name, and downsized his tax return preparation business to ten stores operating under the name Nation Tax Services in Florida, Alabama, Georgia, and North Carolina.

13. Maria Sutton began working as an employee at Nation Tax Services in 2013, and continued as an employee there through 2015. She was an administrative assistant during her time with Nation Tax Services.

14. In January 2014 Jason Stinson created a new limited liability company, Eagle Nest Management, Inc., through which he purchased rental properties to rehabilitate and sell. The funds used to purchase the properties came from Jason Stinson's tax return preparation business.

15. On September 23, 2014, the United States filed its complaint in *United States v. Jason Stinson, individually and doing business as LBS Tax Services and Nation Tax Services LLC.,* Case No. 6:14-cv-1534-ACC-TBS (M.D. Fla.), seeking an injunction against Jason Stinson and his tax return preparation business, along with the disgorgement of unjust profits.

16. On January 28, 2016, the Court entered a preliminary injunction against Jason Stinson, individually and doing business as LBS Tax Services and Nation Tax Services LLC, from engaging in the tax return preparation business.

17. On April 29, 2016, Jason Stinson obtained a home equity line of credit in the amount of $300,000 from Wells Fargo Bank, using 2205 Smoketree Court as collateral for any loan advances. Between June 10, 2016 and September 9, 2016, Jason Stinson took advances on the home equity line of credit in the total amount of $298,000. Of that amount, $148,000 was transferred to Eagle Nest Management LLC and used for the repair of four properties, one of which was sold in December 2016, another two were sold in February 2017, and the last was sold in May 2017. Jason Stinson has not accounted for the proceeds of those sales, amounting to approximately $375,000, notwithstanding efforts by the United States to obtain that information from him in post-judgment discovery.

18. On June 16, 2016, Maria Sutton created Central Florida Dream Realty. She has been and remains the sole shareholder and officer of the corporation.

19.     On August 3, 2016, Jason Stinson took a $150,000 advance on the line of credit, which was sent by wire transfer directly to the account of Central Florida Dream Realty.

20.     The court conducted a six-day bench trial in October and November 2016 in *United States v. Jason Stinson, individually and doing business as LBS Tax Services and Nation Tax Services LLC.,* Case No. 6:14-cv-1534-ACC-TBS.  On March 6, 2017, the Court issued its memorandum and opinion making findings of fact and conclusions of law, and permanently enjoining Jason Stinson and his companies from engaging in the tax return preparation business, among other things.  In its opinion, the court found that Jason Stinson and his employees had engaged in "fraudulent and deceptive conduct" because "the goal of his business model was essentially take advantage of low-income taxpayers."  The court further found that the United States had "proven by clear and convincing evidence that Stinson engaged in fraudulent conduct by making improper, inflated, and false claims on tax returns . . . ."  Among the common fraudulent tactics the court identified on tax returns prepared by Jason Stinson's business were: (a) claiming personal expenses as business expenses; (b) fabricating deductions for unreimbursed employee expenses; (c) reporting charitable contributions that were not actually made; (d) reporting fictitious Schedule C businesses with fabricated income and expenses; (e) inflating profits and losses of actual business; and (f) claiming unwarranted education credits.  The court found that these tactics were aimed at reporting what training materials for Jason Stinson's company called the "magic" income range between $16,000 and $18,000, regardless of the client's actual financial circumstance, in order to obtain the maximum amount in refunds from the IRS.  The court found that Jason Stinson's customers were not aware of the false information reported on their tax returns; and that return preparation fees were excessive – often more than

$660 and sometimes $999 – and improperly based on the number of schedules submitted with the returns and amount of the refunds fraudulently obtained.  The court noted that Jason Stinson had continued the fraudulent activity even throughout 2015, during the pendency of the litigation, ceasing only when the preliminary injunction was issued in January 2016.

21.     In addition to enjoining Jason Stinson and his business, the court's March 6, 2017 memorandum and order required Jason Stinson to disgorge $949,952.47 in unjust profits to the United States.  The following day, March 7, 2017, the court entered a judgment in that amount "for equitable monetary relief" in favor of the United States and against Jason Stinson.

22.     Three days later, on March 10, 2017, Maria Sutton executed a document on behalf of Central Florida Dream Realty entitled "Promissory Note," purporting to characterize the August 3, 2016 transfer of $150,000 from Jason Stinson to Central Florida Dream Realty as a loan.  This was done at the urging of Jason Stinson's attorney.  A copy of the purported promissory note is appended as Exhibit 1 to this complaint.  Upon information and belief, no payments have been made on the note.

23.     On March 17, 2017, 10 days following entry of judgment against Jason Stinson, Central Florida Dream Realty transferred more than $81,000 out of its bank account.  By July 2017 Central Florida Dream Realty's bank accounts held less than $20,000.

24.     Jason Stinson and Maria Sutton were married in June 2017.  She is now known as Maria Stinson.

## COUNT 1

### JUDGMENT FOR FRAUDULENT TRANSFER

25. The United States repeats the allegations set forth in paragraphs 7 through 24, above.

26. Jason Stinson's transfer of $150,000 to Florida Dream Realty on August 3, 2016, was fraudulent, and within the scope of FSA § 726.105(1)(a), as the transfer was made with the actual intent to hinder, delay or defraud the United States in its efforts to collect the judgment for equitable monetary relief in the amount of $949,952.47, as shown, among other things, by the following badges of fraud:

    a. The transfer was to an insider;

    b. The transfer was made during the pendency of litigation that resulted in a $949,952.47 judgment against Jason Stinson, and after the district court had ruled that the United States had a substantial likelihood of success on the merits;

    c. Jason Stinson concealed other assets, namely, the approximately $375,000 in sale proceeds from four properties he sold through Eagle Nest Management LLC in late 2016 and early 2017;

    d. The August 3, 2016 transfer was made for no consideration, because the $150,000 note dated March 10, 2017, from Central Florida Dream Realty, created after entry of judgment, was not consideration for the transfer that was made seven months earlier. The purported note did not represent a true indebtedness;

    e. Jason Stinson has defrauded the United States in the past, namely, through his fraudulent tax return preparation business; and

    f. Three and a half years have passed since entry of the judgment, Jason Stinson has in the interim had substantial assets with which to pay a significant portion of the judgment, but he has chosen not to pay anything towards the judgment.

  27. Jason Stinson's transfer of $150,000 to Florida Dream Realty on August 3, 2016, was constructively fraudulent, within the scope of FSA § 726.106(1), because:

    a. The transfer was made for no consideration, as the $150,000 note dated March 10, 2017, from Central Florida Dream Realty was a contrivance created after entry of judgment, was not intended as a true note, and did not represent a true indebtedness; and

    b. Jason Stinson was insolvent within the meaning of FSA § 726.103(1) on August 3, 2016, because the liabilities to the United States he had incurred by that time, albeit not yet reduced to judgment, exceeded the value of his assets.

  28. The United States is entitled to: (a) the avoidance of the August 3, 2016, transfer of $150,000, pursuant to FSA § 726.108(1)(a); (b) execution against any property purchased by Central Florida Dream Realty with the $150,000 or its proceeds, pursuant to FSA § 726.108(2); and a judgment in the amount of $150,000, plus prejudgment interest, pursuant to FSA § 726.109(2).

  29. Maria Stinson has been the sole shareholder and sole officer of Central Florida Dream Realty throughout its existence, and has exercised such control over the corporation that its independent existence was and is a mere formality.

  30. Maria Stinson participated in Jason Stinson's fraudulent transfer of $150,000 on August 3, 2016, by (a) agreeing to the scheme beforehand, (b) creating Central Florida Dream Realty in June 2016, (c) causing her corporation to receive and spend the fraudulently transferred

8

funds; and (d) executing a spurious note three days after entry of judgment to create the false appearance of consideration for the transfer.

31.     Maria Stinson used Central Florida Dream Realty as a vehicle to effectuate Jason Stinson's August 3, 2016, fraudulent transfer and dissipated the corporation's assets, undermining the Government's ability to recover the fraudulently transferred funds.

WHEREFORE, the United States asks for judgment on Count 1 as follows:

A.  A determination that the transfer of $150,000 from Jason Stinson to Central Florida Dream Realty on August 3, 2016, was fraudulent as to the United States and may be avoided pursuant to FSA § 726.108(1)(a) to satisfy the United States' judgment against Jason Stinson for equitable monetary relief in Case No. 6:14-cv-1534-ACC-TBS;

B.  A determination that pursuant to FSA § 726.108(2) the United States may execute on any proceeds of the fraudulent transfer; and

C.  A money judgment in the amount of $150,000, plus prejudgment interest from August 3, 2016, in favor of the United States and against Central Florida Dream Realty and Maria Stinson, jointly and severally.

## COUNT 2

### EQUITABLE RELIEF REGARDING NOTE

32.     The United States repeats the allegations set forth in paragraphs 7 through 24, above.

33.     The $949,952.47 judgment entered against Jason Stinson in *United States v. Jason Stinson, individually and doing business as LBS Tax Services and Nation Tax Services LLC.,*

9

Case No. 6:14-cv-1534-ACC-TBS, is in the nature of equitable monetary relief, and is enforceable through the Court's inherent equitable powers, including through its civil contempt powers.

34. In the event the Court concludes that the purported note attached as Exhibit 1 to this complaint is bona fide, the United States is entitled to step into the shoes of Jason Stinson and receive the payments on the note and enforce the note through a judgment, if appropriate.

WHEREFORE, the United States asks the Court for judgment on Count 2, as an alternative to the relief sought by way of Count 1, as follows:

A. Requiring Jason Stinson to assign the note dated March 10, 2017, from Central Florida Dream Realty to the United States;

B. Requiring Central Florida Dream Realty to make payments on the note directly to the United States; and

a. Entering judgment in favor of the United States and against Central Florida Dream Realty for an appropriate amount in the event the note is in default.

> RICHARD E. ZUCKERMAN
> Principal Deputy Assistant Attorney General
>
> By:    _s/ Philip Doyle_____
> PHILIP DOYLE
> Trial Attorney, Tax Division
> U.S. Department of Justice
> Post Office Box 310
> Ben Franklin Station
> Washington, D.C.  20044
> Telephone:  (202) 514-9673
> Facsimile: (202) 514-4963
> Email: Philip.A.Doyle@usdoj.gov

# EXHIBIT 1

## PROMISSORY NOTE

Amount: $150,000.00

Date: 3/10/2017
Effective Date: August 3, 2016

FOR VALUE RECEIVED, the undersigned, Central Florida Dream Realty, Inc., a Florida corporation (the "Maker"), hereby promises to pay to the order of Jason P. Stinson (the "Payee"), the principal sum of One Hundred Fifty Thousand Dollars and No/100 Cents ($150,000.00) pursuant to the terms and conditions set forth herein.

**PAYMENT OF PRINCIPAL.** The principal amount of this Promissory Note (the "Note") and any accrued but unpaid interest shall be due and payable in 120 equal monthly installments beginning January 1, 2018 until paid in full. All payments under this Note shall be applied first to accrued but unpaid interest, and next to outstanding principal.

**INTEREST.** This Note shall bear interest, compounded annually, at 5% percent.

**PREPAYMENT.** The Maker shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty.

**REMEDIES.** No delay or omission on part of the holder of this Note in exercising any right hereunder shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The rights and remedies of the Payee shall be cumulative and may be pursued singly, successively, or together, in the sole discretion of the Payee.

**EVENTS OF ACCELERATION.** The occurrence of any of the following shall constitute an "Event of Acceleration" by Maker under this Note:

(a)   Maker's failure to pay any part of the principal or interest as and when due under this Note; or

(b)   Maker's becoming insolvent or not paying its debts as they become due.

**ACCELERATION.** Upon the occurrence of an Event of Acceleration under this Note, and in addition to any other rights and remedies that Payee may have, Payee shall have the right, at its sole and exclusive option, to declare this Note immediately due and payable.

**SUBORDINATION.** The Maker's obligations under this Promissory Note are subordinated to all indebtedness, if any, of Maker, to any unrelated third party lender to the extent such indebtedness is outstanding on the date of this Note and such subordination is required under the loan documents providing for such indebtedness.

**WAIVERS BY MAKER.** All parties to this Note including Maker and any sureties, endorsers, and guarantors hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal and interest; and all such

109

parties waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

**EXPENSES.** In the event any payment under this Note is not paid when due, the Maker agrees to pay, in addition to the principal and interest hereunder, reasonable attorneys' fees not exceeding a sum equal to 15% of the then outstanding balance owing on the Note, plus all other reasonable expenses incurred by Payee in exercising any of its rights and remedies upon default.

**GOVERNING LAW.** This Note shall be governed by, and construed in accordance with, the laws of the State of Florida.

**SUCCESSORS.** All of the foregoing is the promise of Maker and shall bind Maker and Maker's successors, heirs and assigns; provided, however, that Maker may not assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the holder of this Note.

**IN WITNESS WHEREOF,** Maker has executed this Promissory Note as of the day and year first above written.

Maker:

CENTRAL FLORIDA DREAM REALTY, INC.
A Florida Corporation

Title: President
Name: Maria Sutton

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
Maria Stinson, Central Florida Dream Realty, Inc., Jason Stinson

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Seminole
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
Fritz Scheller, Esq.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [X] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 usc 7402

Brief description of cause:
Fraudulent transfer action to enforce judgment in Case No. 6:14-cv-1534-ACC-TBS

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 150,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE: Judge Anne Conway
DOCKET NUMBER: 6:14-cv-1534-ACC-TBS

DATE: 07/29/2020
SIGNATURE OF ATTORNEY OF RECORD: /s/ Philip Doyle

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below**; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: [Nature of Suit Code Descriptions](#).

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.